UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 3:07-52

UNITED STATES OF AMERICA,                                                                 PLAINTIFF,

v.                                        OPINION AND ORDER

JOSEPH EDELSTEIN, SUZANNE EDELSTEIN,
THOMAS B. BOND and HOLLAND PHARMACY,                              DEFENDANTS.

* * * * * * * * *

This matter is before the Court on the Motions for Summary Judgment filed by the Plaintiff the United States of America [DE 61] and the Defendant Thomas B. Bond [DE 62].

**I.      Background.**

The United States filed this Complaint against four Defendants: Joseph Edelstein and his wife, Suzanne Edelstein; Holland Pharmacy, which Joseph Edelstein owned and operated; and Thomas B. Bond, who worked at the pharmacy. Both Bond and Joseph Edelstein were licensed pharmacists.

In late 2007, Bond and Joseph Edelstein pleaded guilty in this Court to knowingly selling prescription drug samples in violation of the Prescription Drug Marketing Act at 21 U.S.C. § 353 (c)(1). That statute prohibits any person from selling drug samples. *United States v. Edelstein et al.*, Case No. 3:06-cr-00028-KKC (E.D. Ky. filed Aug. 3, 2006).

In this civil action, the United States charges that the four Defendants violated the False Claims Act ("FCA"), 31 U.S.C. §3729, *et seq.* when they sold the sample drugs and then submitted claims to the entities that oversee Medicaid in Kentucky. In addition to the claims under the FCA, the Government also asserts common law claims for payment by mistake and unjust enrichment. The

Government now moves for summary judgment in its favor. Defendant Bond moves for summary judgment in his favor on the claims asserted against him.

**II.     Analysis.**

Under Fed. R. Civ. P. 56, summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Government asserts claims under the version of the FCA that was in effect at the time the Complaint was filed. Specifically, the Government asserts claims under 31 U.S.C. §§ 3729(a)(1), 3729(a)(2), and 3729(a)(3).

Congress amended the FCA in 2009 with the Fraud Enforcement and Recovery Act ("FERA"). Pub. L. No. 111-21, 123 Stat. 1617 (2009). The amendments altered the language of these subsections and redesignated them as §§ 3729(a)(1)(A), 3729(a)(1)(B), and 3729(a)(1)(C), respectively. FERA provides that, with regards to the amendments to former sections 3729(a)(1) and 3729(a)(3), the amendments shall not take effect until May 20, 2009 and "shall apply to conduct on or after" that date. FERA § 4(f), 123 Stat. at 1625. The relevant conduct by the Defendants all occurred prior to May 20, 2009. Thus, for the United States' claims under former sections 3729(a)(1) and 3729(a)(3), the 2009 amendments clearly do not apply to this action.

There is some disagreement as to the retroactivity of the amendments to subsection 3729(a)(2) which the Court will discuss further below.

**A.     Government's Claim under Subsection (a)(1) Against Bond, Edelstein, and Holland Pharmacy.**

In Count I of its Complaint, the Government asserts a claim under former subsection 3729(a)(1) against Bond, Edelstein, and Holland Pharmacy. That subsection prohibits any person from "knowingly present[ing], or caus[ing] to be presented, *to an officer or employee of the United States Government*. . . a false or fraudulent claim for payment or approval. . . ." 31 U.S.C. § 3729(a)(1)(emphasis added).

Bond argues that the Government has failed to present any evidence that he or Edelstein presented false claims "*to an officer or employee of the United States Government*" as the statute requires. [DE 74 at 3]. Bond argues that the Government has only argued that he and Edelstein presented false claims to University Health Care, Inc. d/b/a Passport Health Plan ("Passport") which is not a government entity. [DE 74 at 3].

### 1) Supreme Court's *Allison Engine* Decision and the FERA Amendments.

To understand this argument, it is necessary to explore the case law leading up to Congress's decision to amend the FCA with FERA. That decision was in direct response to the Supreme Court's decision in *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008) by which the Supreme Court sought to resolve a conflict between the Sixth and D.C. Circuit Courts of Appeals regarding the proper interpretation of subsections (a)(2) and (a)(3) of the FCA.

In *Allison Engine*, the district court had held that all three sections of former Section 3729(a) required a showing that the false claim at issue had actually been presented to the Government for liability to attach. *Allison Engine*, 471 F.3d 610, 613 (6th Cir. 2006). At trial, the plaintiffs did not present any evidence that any invoice was actually presented to the Government. Instead, they presented evidence that all of the money paid to the defendants ultimately came from the Government. *Id*. at 613. The district court held that this was insufficient as a matter of law to establish liability under each of the three subsections of the FCA and granted the defendants' motion

3

for judgment as a matter of law. *Id*. The Sixth Circuit reversed, holding that subsections (a)(2) and (a)(3) only require evidence that the false claim at issue was ultimately "paid with government funds." *Id*. at 615.

In reviewing the Sixth Circuit's decision in *Allison Engine*, the Supreme Court stated that it conflicted with the D.C. Circuit's holding in *United States ex. rel. Totten v. Bombardier Corp*., 380 F.3d 488 (D.C. Cir. 2004). 553 U.S. at 668. In *Totten*, the district court dismissed the complaint alleging that the defendants violated subsection (a)(1) by submitting false invoices to Amtrak. Totten, 380 F.3d at 490. The D.C. Circuit affirmed, finding that "Amtrak is not the Government," and that, under the plain language of 3729(a)(1), "claims must be presented to an officer or employee of the Government before liability can attach." *Id*. at 490.

In *Totten*, the court also analyzed subsection (a)(2) which imposes liability on anyone who makes a false record or statement "to get a false or fraudulent claim paid or approved by the Government." The majority determined that (a)(2) was not applicable because the records at issue "were made to get claims paid or approved by Amtrak, and Amtrak is not the Government." *Id*. at 502. The court determined that finding liability where a federal fund grantee – as opposed to the Government – pays or approves a claim would require reading out of the statute the phrase "by the Government." *Id*. at 498-99.

Thus, the Sixth and D.C. Circuits' interpretations of subsection (a)(2) conflicted as the Supreme Court noted: the Sixth Circuit held that a defendant can be held liable under subsections (a)(2) and (3) with evidence that the false claim at issue was ultimately "paid with government funds." *Allison Engine*, 471 F.3d at 615. The D.C. Circuit found that this was insufficient. *Totten*, 380 F.3d at 498. Instead, there must be evidence that the false record was made to get claims paid or approved "by the Government." *Id*.

4

With *Allison Engine*, the Supreme Court undertook to resolve this conflict. 553 U.S. at 668. It concluded that "it is insufficient for a plaintiff asserting a §3729(a)(2) claim to show merely that '[t]he false statement's use ... result[ed] in obtaining or getting payment or approval of the claim,' or that 'government money was used to pay the false or fraudulent claim'" as the Sixth Circuit had held *Id*. at 665 (citations omitted). Instead, the Supreme Court held that the focus should be on the defendant's intent.

Namely, a plaintiff asserting a "3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim." *Id*. at 665. "[A] defendant must intend that the Government itself pay the claim." *Id*. at 669. "Similarly, a plaintiff asserting a claim under § 3729(a)(3) must show that the conspirators agreed to make use of the false record or statement to achieve this end." *Id*. at 665.

Subsection (a)(1) was not specifically at issue in the Supreme Court's decision and, as a result, the Court discussed it only briefly. In a footnote, the Court noted that section 3729(c) of the statute provides that "a 'claim' may be made to a contractor, grantee, or other recipient of Government funding." *Id*. at 670 n. 1. The Court determined that this made clear that "there can be liability under 3729(a)(1) where the request or demand for money or property that a defendant presents to a federal officer for payment or approval. . .may be a request or demand that was originally 'made to' a contractor, grantee, or other recipient of federal funds and then forwarded to the Government." *Id*. This interpretation complies with the language of subsection (a)(1) which required that the defendant either "present" or "*cause* to be presented" a false claim to a government employee.

Thus, for a claim under subsection (a)(1), the plaintiff need not present evidence that the defendant himself presented the false claim to the Government, but there must be evidence that the

5

defendant submitted a false claim and that the claim was ultimately submitted to the Government for payment or approval. *See Marlar v. BWXT Y-12,* LLC, 525 F.3d 439, 445 (6th Cir. 2008)(citing *Allison Engine Co.*, 471 F.3d at 614).

For a claim under section (a)(2), a plaintiff need not present evidence that the defendant himself presented a false record or statement to the Government, but the plaintiff must present evidence that the defendant used or made a false record or statement or caused one to be used or made and that he did so with the intent that the Government itself pay a false claim.

**2)     Government's Evidence that the Claims were Submitted to the Government.**

In its Complaint, the Government asserts that "[a]fter the sample drugs were sold to the customers of Holland Pharmacy, Defendants Joseph Edelstein and Bond would then cause false and fraudulent claims to be submitted *to Medicaid and Passport* for full payment of the prescription drugs." It also asserts that "*Medicaid and Passport* relied on the false and fraudulent claims filed by Defendants Joseph Edelstein and Bond. . . and made payments to Holland Pharmacy in reliance upon those false and fraudulent claims."

To the extent that the Government can produce evidence that Bond or Edelstein presented false claims directly to the state agency that administers Medicaid, that would constitute evidence that the defendants presented or caused to be presented "to an officer or employee of the United States Government…a false or fraudulent claim for payment or approval" as the statute requires.

Medicaid is "a joint federal-state program, funded with state and federal money and administered by state government." *United States v. Shelburne*, No. 2:09-cv00072, 2010 WL 2542054, at * 1 (W.D. Va. June 24, 2010). However, in *United States ex rel. Ven-A-Care v. Actavis Mid Atlantic, LLC*, 659 F. Supp. 2d 262 (D. Mass. 2009), the district court explained that, "[v]irtually every court that has considered the issue after *Totten* has found that Medicaid fraud

claims are actionable under § 3729(a)(1)." *Id.* at 269 (citing e.g., *United States v. Rogan*, 459 F. Supp. 2d 692, 717 (N.D. Ill. 2006); *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, No. 02 C 6074, 2005 WL 2667207, at *2 (N.D. Ill. Oct. 17, 2005); *United States ex rel. West v. Ortho–McNeil Pharm., Inc.*, No. 03 C 8239, 2007 WL 2091185, at *2 (N.D. Ill., Jul. 20, 2007); *United States ex rel. Nichols v. Omni H.C., Inc.*, No. 4:02-cv-66(HL), 2008 WL 906425, at *4 (M.D. Ga. Mar. 31, 2008); *United States v. Cathedral Rock Corp.*, No. 4:03cv1090HEA, 2007 WL 4270784, at *3 (E.D. Mo. Nov. 30, 2007)).

> In *Ven-A-Care*, the court reasoned as follows:
>
> Medicaid is "based upon a comprehensive funding and reimbursement structure between the state and federal government [that] is different from the federal funding mechanism for Amtrak" considered in *Totten*. *Amerigroup*, 2005 WL 2667207, at * 2. Medicaid is not funded by a static block grant. Instead, the state seeks federal funding through quarterly requests, draws down from federal letters of credit as providers seek payment for Medicaid claims, and then submits reconciliations to the federal government which affect future funding. Under this funding scheme, in which false claims lead to direct draw downs from federal letters of credit, a provider who submits a false Medicaid claim to the state presents a false claim for payment or approval to the United States. *As the claims at issue here were presented to the federal government*, VAC has stated a claim under § 3729(a)(1) of the FCA.

*Ven-A-Care*, 659 F.Supp. 2d at 269-70 (emphasis added).

Thus, *Ven-a-Care* appears to reason that claims submitted to the state Medicaid agency are actionable under subsection (a)(1) because the state eventually submits the claims to the federal government as part of the reconciliation process.

Likewise, in *United States ex rel. Fry v. The Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2008 WL 5282139 (S.D. Ohio Dec. 18, 2008), the district court accepted the Government's argument that subsection (a)(1) reaches claims submitted to state agencies administering Medicaid because "all Medicaid claims must be reconciled by the [Centers for Medicare & Medicaid Services], a federal agency. . . " *Id.* at * 11, 13 (citing *United States v. Rogan*,

7

459 F. Supp. 2d 692, 717 (N.D. Ill. 2006). In *Tyson*, the court reasoned as follows:

> [T]he federal government ultimately approved the purportedly false Medicaid claims processed and submitted to it by the [state Medicaid agency]. Based on those claims, the federal government then reimbursed the State of Illinois by disbursing funds into an account drawn upon by the State of Illinois. . . any false or fraudulent claims submitted to the [state Medicaid agency], in turn, *are presented to the federal government for reimbursement*, thereby resulting in an impairment or misappropriation of federal funds when those claims are actually paid.

*Tyson*, 2005 WL 2667207, at * 3 (emphasis added).

It is true that the cases the courts relied upon in *Ven-a-Care, The Health Alliance*, and *Tyson* for the proposition that subsection (a)(1) reaches claims submitted to state Medicaid agencies were all decided before *Allison Engine*. However, in a very recent decision, in analyzing claims under former subsections (a)(1) and (a)(2), the Sixth Circuit explicitly confirmed that "[t]he FCA reaches claims submitted by health-care providers to Medicare and Medicaid. . . ." *Chesbrough v. VPA, P.C.*, No. 10-1494, 2011 WL 3667648, at *3 (6th Cir. Aug. 23, 2011).

Accordingly, if the Government asserts here that the Defendants presented false claims to the state agency that administers Medicaid, then subsection (a)(1) would reach that activity because the claims are ultimately presented to the federal government. There may be factual issues still regarding the "materiality" of any false statements and regarding whether Bond ever submitted a claim himself [DE 62, Bond Mem. at 7] but subsection (a)(1) does, at least, reach such a claim.

In its motion for summary judgment, however, the Government does not appear to assert that Bond or Edelstein submitted claims directly to the state Medicaid agency which then passed the claim along to the federal government in some fashion. Instead, the Government appears to assert that Bond and Edelstein submitted false claims only to Passport. [DE 61, U.S. Mem. at 5; DE 78, U.S. Reply, Ex. 1, CM-ECF pg. 4].

Passport is not a federal government entity, but is instead a nonprofit corporation organized

in Kentucky. In his deposition, John Hoffman of the Kentucky Cabinet for Health and Family Services, Department of Medicaid Services, explains that Passport "operates under a waiver from the regular Medicaid program" [DE 61, Att. 16, Hoffman Dep. at 8] and it does not function in the same way that Medicaid functions. Medicaid is a fee-for-service program while Passport is a managed-care program. The question is whether Passport passes health care provider claims along to the federal government as the state Medicaid agencies do.

The record is not clear on this point. It is clear that, in the counties serviced by Passport, healthcare providers submit claims to AmeriHealth Mercy, which is Passport's benefits administrator. [DE 62, Att. 16, Hoffman Dep. at 12]. It is also clear that AmeriHealth is the entity that actually pays the healthcare provider's claim. [DE 62, Att. 5, Hoffman Dep. at 12, 21, 23].

It appears that AmeriHealth eventually passes the claims along to the state Medicaid agency. Hoffman explained that, every six months, there is a "reconciliation process" [DE 61, Att. 5, Hoffman Dep. at 22-23] by which Medicaid compares the amounts AmeriHealth actually paid to health care providers for claims during the six-month period and the capitation fees that Medicaid paid to Passport during the same time period. After the reconciliation process, Medicaid either recoups any surplus paid to Passport (if the capitation fee exceeded the claims paid by AmeriHealth) or pays Passport additional funds (if the capitation fee was less than the claims paid by AmeriHealth). Hoffman testified that, once a month, Passport sends Medicaid a file containing all the claims paid the previous month. He stated that, at that point, the claim would have already been paid by AmeriHealth. [DE 61, Att. 5, Hoffman Dep. at 23].

However, the Government has pointed to no evidence that the claims at issue were eventually presented to "an officer or employee of the United States Government...for payment or approval" as subsection (a)(1) requires. The Court has looked through the record on its own in search of such

evidence and has been unable to locate it.

The Government argues in its reply brief [DE 78, Reply at 6] that the presentment requirement is satisfied because the Defendants were aware that the federal government would eventually pay the claims. Even if this is true, however, such awareness does not satisfy the presentment requirement in subsection (a)(1). The Government seems to be confusing the "intent" requirement of subsection (a)(2) with the presentment requirement of (a)(1).

The Government also argues in its reply brief that Passport's employees should be considered federal government employees for purposes of subsection (a)(1) because Passport was "created by the federal government, funded by the federal government, and subject to federal oversight and management." [DE 78, Reply at 7]. However, the Government cites no legal authority for the argument that Passport, a nonprofit corporation, should be considered a federal government entity for purposes of subsection (a)(1). As explained above, the Court reads the cases holding that subsection (a)(1) reaches claims submitted to state Medicaid agencies to rely on the fact that the claims are ultimately passed along to the federal government in the reconciliation process. Thus, whether Passport was created by federal funds or is subject to federal oversight, for purposes of a claim under subsection (a)(1), the Government must submit evidence that the claims at issue were presented to a federal government employee.

The Government argues that Edelstein and Bond are estopped from denying liability under the FCA because they pleaded guilty in the criminal action to violating the Prescription Drug Marketing Act. In support of this argument, the Government cites another provision of the FCA, 31 U.S.C. § 3731(d),[1] which provides as follows:

---

[1] The current version of this provision is found at 31 U.S.C. § 3731(e).

10

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

This is the same argument the Government made in its first Motion for Summary Judgment. As the Court explained at that time, neither Bond nor Edelstein pleaded guilty to a charge of fraud or false statements. They pleaded guilty to knowingly selling prescription drug samples in violation of the Prescription Drug Marketing Act at 21 U.S.C. § 353 (c)(1). The Government has not argued that that offense involves fraud or false statements and the Court has found no support for any such argument. Thus, these Defendants are not estopped from denying the essential elements of the FCA claims against them under Section 3731(d).

Accordingly, the Government's Motion for Summary Judgment in its favor on its claims under subsection (a)(1) asserted against Bond, Edelstein, and Holland Pharmacy must be denied. Further, because there is a factual issue as to whether any allegedly false claim was ultimately submitted to a federal government employee for payment or approval, Bond's Motion for Summary Judgment in his favor on this claim must also be denied. Bond argues in addition that the Government offers no evidence that he knowingly submitted any false claim to Passport. However, there is at least a factual dispute on this issue.

    **B.**    **Government's Claim under Subsection (a)(2) against Bond and Edelstein.**

In Count II of its Complaint, the Government asserts a claim against Bond and Edelstein d/b/a Holland Pharmacy ("Edelstein") under former subsection (a)(2). Again, that section prohibits any person from "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. §

3729(a)(2).

However, in its Motion for Summary Judgment, the Government appears to assert this claim against only Edelstein and to abandon this claim against Bond. [DE 61, U.S. Mem. at 10 ("Edelstein has made false certifications. . . under Section (a)(1)(B))]. In its response to Bond's Motion for Summary Judgment, the Government argues that Bond created records material to a false claim. However, it appears to make this assertion only with regard to a conspiracy claim under subsection (a)(3). [DE 69, Response at 6 (arguing that the Government does not have to prove which pharmacist submitted each false claim because "conspirators are jointly and severally liable for damages.")]. Accordingly, Defendant Bond's Motion for Summary Judgment in his favor on the Government's claim under subsection (a)(2) will be granted.

As discussed, in response to *Allison Engine*, Congress amended subsection (a)(2) with FERA and renumbered it as Section 3729(a)(1)(B). Again, *Allison Engine* held that section (a)(2) required proof the defendant intended "that the Government itself pay the claim." 553 U.S. at 669. The Court concluded that it was not enough for the plaintiff to show only that '[t]he false statement's use ... result[ed] in obtaining or getting payment or approval of the claim,' or that 'government money was used to pay the false or fraudulent claim.'" *Id*. at 665. Instead, the Supreme Court held a plaintiff asserting a "3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim." *Id*. at 665.

After *Allison Engine*, with FERA, Congress amended this provision to prohibit any person from "knowingly mak[ing], us[ing], caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). In other words, Congress omitted the requirement that the defendant use the false record or statement with the intent of "getting" the Government itself to pay or approve a false claim.

12

The Act provides that the amendment to subsection (a)(2) "shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act. . . that are pending on or after that date." FERA, §4(f), 123 Stat. at 1625. There is some disagreement among courts about the meaning of the term "claims." If, as most courts hold, "claims" means the allegedly false claims submitted for payment, then the amendments would not apply to this case. *See U.S. v. Carell*, No. 3:09-cv-445, 2011 WL 1060669 at *4 (M. D. Tenn. March 21, 2011). The Government alleges that the Defendants submitted claims between 2001 and 2005 and none was pending on or after June 7, 2008.

If, however, as other courts hold, "claims," means lawsuits against individuals for violations of the FCA, then the amendments would apply to this case because this action was pending on June 7, 2008. *See United States ex rel. Stephens v. Tissue Science Laboratories, Inc.*, 664 F. Supp. 2d 1310, 1315 n.2 (N.D. Ga. 2009). The Sixth Circuit has not addressed this issue. *See United States v. Ford Motor Co.*, 618 F.3d 505, 510 n.2 (6th Cir. 2010); *Chesbrough*, 2011 WL 3667648 at * 10 n.2.

The Court agrees with the analysis in *Carell* which led that court to conclude that "claims" refers to claims made to the Government for money or property. *Carell,* 2011 WL 1060669, at *5. First, the court noted the definition of "claim" in the FCA itself. *Id*. In both the pre- and post-FERA versions, the FCA makes clear that the term "claim" means "any request or demand…for money or property" submitted to an officer or employee of the federal government or a contractor, grantee or other recipient.   31 U.S.C. § 3729(b)(2)(post-FERA); 31 U.S.C. § 3729(c)(pre-FERA).

Second, the court pointed out that the use of the term "claims" in the title of Section 3729 ("False Claims") and in the title of the "False Claims Act" itself confirm that "claims" is a "term of art in FCA cases that refers to claims made to the government for money property." *Id*. at *5.

Finally, the Court noted that, within FERA itself, Congress had provided that certain

13

amendments would apply to *cases* pending on the date of the enactment. *Id*. Thus, if Congress had meant the amendments to subsection (a)(2) to apply to *cases* pending on a certain date, it knew how to do so. *Id*. at *5. *See also U.S. ex rel. Sanders v. Allison Engine Co., Inc.*, 667 F. Supp. 2d 747, 752 (S.D. Ohio 2009).

Because the amendments to subsection (a)(2) apply only to claims for money or payment that were pending on or after June 7, 2008, the amendments are not applicable in this action. Thus, the holding of *Allison Engine* applies. The Government must prove that the Defendants intended "that the Government itself pay the claim[s]" at issue. 553 U.S. at 669.

Intent is generally a question of fact. *See United States ex rel. Romano v. New York-Presbyterian Hospital*, 571 F. Supp. 2d 473, 476 (S.D.N.Y. 2008)("question of such intent is of course one of fact, thus requiring the remand ordered in *Allison Engine* and the trial scheduled in this case"); *Carell*, 2011 WL 1060669 at *6. *See also U.S. ex rel. Sanders v. Allison Engine Co., Inc.*, 667 F. Supp. 2d 747, 750 (S.D. Ohio 2009)(setting trial date on remand).

In this case, it is not clear from the record whether Edelstein intended that, upon the submission of the claims at issue to AmeriHealth, the federal government would pay the claim. Accordingly, the Government's Motion for Summary Judgment on its claim against Edelstein under subsection (a)(2) will also be denied.

      **C.**      **Government's Claim under Subection (a)(3) against Bond, Joseph Edelstein, and Suzanne Edelstein.**

In Count III of its Complaint, the Government asserts a claim under subsection (a)(3) against Bond, Joseph Edelstein and Suzanne Edelstein. This provision prohibits any person from "conspir[ing] to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. 3729(a)(3). In *Allison Engine*, the Court determined that, under this provision:

> It is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government. Instead, it must be shown that the conspirators intended "to defraud the Government." Where the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim. It is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim.

*Allison Engine*, 553 U.S. at 672-73.

In its motion, the Government requests summary judgment for a claim under (a)(3) against Dr. Ronald Koff.  The Government, however, has not asserted a claim against Dr. Koff.  The Government does not even name Dr. Koff in its Complaint.  Dr. Koff is a party to this action because Defendant Bond filed a Third Party Complaint against him, asserting claims of indemnification, contribution, and civil conspiracy.  Thus, the Government's motion for summary judgment for its "claim" under (a)(3) against Dr. Koff will be denied.  It has asserted no such claim and neither has any other party to this action.

The cases cited by the Government -- *Knell v. Feltman*, 174 F.2d 662 (D.C. Cir. 1949) and *Dewald v. Minister Press Co.*, 494 F.2d 795 (6th Cir. 1974) -- do not stand for the proposition that a plaintiff may be awarded judgment on a claim he never asserted against a defendant that he never asserted any claim against. The Government seems to argue that the Court should allow the Government to amend the Complaint to assert a claim against Dr. Koff.  If the Government wants leave to amend its Complaint, it must request that relief in a motion to that effect and not in a Reply brief.  *See* Fed. R. Civ. P. 7(b)(1).

As to the Government's (a)(3) claim against Bond and Joseph Edelstein, again there is an issue of fact as to whether the defendants intended that the federal government would pay the claims

at issue.  As to the Government's (a)(3) claim against Suzanne Edelstein, there is an issue of fact as to whether she participated in "shucking the drugs from their original packets" as the Government asserts and whether she intended that the federal government would pay the claims at issue. [DE 73, Att. 2, S. Edelstein Aff.].  Accordingly, the Government's motion for summary judgment on this claim must also be denied.

### D. Common Law Claims against Joseph Edelstein.

In Count IV and V of its Complaint, the Government asserts claims of "Payment by Mistake" and "Unjust Enrichment" against Defendants Joseph Edelstein, Holland Pharmacy, and Bond. [DE 1, Complaint, Prayer for Relief, p. 15 (clarifying that these claims are asserted against these defendants only)].  In its motion, however, the Government indicates these claims are asserted against Joseph Edelstein only. [DE 61, U.S. Mem. at 16].  The Government does not address the substance of these claims in its motion, asserting that it will forgo these claims if it succeeds on its FCA claims.  Accordingly, to the extent that the Government is moving for summary judgment in its favor on these claims, that motion will be denied.

### III. Conclusion.

For these reasons, the Court hereby ORDERS as follows:

1) The United States' Motion for Summary Judgment [DE 61] is DENIED; and

2) Defendant Bond's Motion for Summary Judgment [DE 62] is GRANTED in part and DENIED in part.  The motion is GRANTED as to the Government's claim against Bond under 31 U.S.C. § 3729 § (a)(2) and that claim is hereby DISMISSED.  Bond's motion is otherwise DENIED.



Signed By:
Karen K. Caldwell
United States District Judge